## MUNICIPAL POSITIONS HELD DE JURE UNDER TEMPORARY APPOINTMENT.

### Superior Court of Cincinnati.

STATE OF OHIO, EX REL JAMES J. FITZGERALD, v. EDWARD S. KEEFER, JOHN J. WEITZEL AND ANDREW H. FOPPE, BEING AND CONSTITUTING THE CIVIL SERVICE COMMISSION OF THE CITY OF CINCINNATI.

#### Decided, August, 1914.

*Civil Service—Tenure of a Temporary Appointee by the Mayor—Rule Limiting to Three Months Inconsistent with Statutory Provisions —Mandatory Writ Will Issue to Certify Such an Appointee on the Pay-Roll, When.*

1. In the absence of an eligible list applicable to a position in the classified service of a municipality, one appointed by the mayor temporarily to fill such position by virtue of General Code, Section 4488 (P. & A., 1912), is entitled to hold such position and receive pay therefor until an eligible list for the position is created by the civil service commission as the result of competitive examination.

2. A rule adopted by a municipal civil service commission providing that temporary appointments by the mayor to positions in the classified service shall not continue more than three months, is inconsistent with Section 4488 (P. & A., 1912), and is an attempted exercise of legislative power by an administrative board, and therefore void.

3. A temporary appointee, appointed prior to January 1st, 1914, holding a position in the classified service for a period longer than that provided by an attempted regulation of the civil service commission, is entitled, nevertheless, to have his name certified by the civil service commission in connection with the pay-roll of his department as "appointed" or "being employed," under the provisions of Section 21 of the civil service act of April 28th, 1913, and a mandatory writ will issue to the civil service commission to so certify.

NOTE—References above made to the General Code are to the Page & Adams Annotated Edition of 1912, prior to the enactment of the civil service law of April 28, 1913.

*Moulinier, Bettman & Hunt,* for the relator.
*Charles A. Groom,* Assistant City Solicitor, contra.

MERRELL, J.

This is an action in mandamus wherein the relator, who has been serving as valveman in the water works department of the city of Cincinnati, seeks to compel the defendants, the civil service commission of Cincinnati, to certify, in connection with the pay-roll of the water works department, that the relator was appointed and is being employed in pursuance of the act of April 28, 1913, relating to the civil service of the state of Ohio. The civil service commission has refused so to certify the pay-roll, containing relator's name, for the week ending August 7, 1914, claiming that the relator was not legally appointed to his position as valveman, and that even if legally appointed his right to hold that position has terminated under the statutes of the state pertaining to civil service and the regulations of the Cincinnati civil service commission. In the absence of such certification, the relator, under the provisions of Section 15 of the act of April 28, 1913, can not draw pay for the period mentioned or any subsequent period. On the pleadings in the case, it is admitted that relator's position is in the classified service of the city of Cincinnati, the compensation therefor being $2.50 a day, or $17.50 per week.

The answer of the commission is, in substance, a general denial, following which it is alleged that the relator, on February 24, 1913, was appointed by the mayor of the city without having taken a competitive examination for the position, and that he was not appointed from an eligible list prepared by the civil service commission and that the mayor of the city failed to secure or procure the authority of the civil service commission to make such temporary appointment. It is further alleged that there existed at the time no extraordinary exigency for such appointment, nor was the same necessary to prevent the stoppage of public business. The answer further sets forth Rule 73 of the civil service commission of Cincinnati, hereinafter quoted, and alleges that the relator has served more than three months,

which by said Rule 73 is made the maximum tenure of a temporary appointee.

At the trial the relator put in evidence a letter of March 7, 1913, as follows:

"To Honorable Civil Service Commission:
"From H. T. Hunt, Mayor.
 "Subject: Temporary appointments.
"In the absence of an eligible list the following men have been appointed to the positions mentioned:
"Jas. J. Fitzgerald, valveman, $2.50 per day, effective February 24.                    (Signed)    HENRY T. HUNT, *Mayor.*"

This letter was received by the civil service commission on or about its date.

There was further put in evidence the official roster kept by the civil service commission of city employees, wherein appears the name of the relator, his position as valvemen, the amount of his salary and the date of his appointment. This roster is entitled "Official Register of Employees," and is the record required to be kept by the provisions of Code (P. & A.), 4483. It also appeared that the relator has never taken an examination, either competitive or non-competitive, for the position of valveman; that he has never been afforded an opportunity to take such examination, and that no examination, competitive or non-competitive, for the position had ever been held.

At the conclusion of relator's proof a motion to dismiss the case was interposed and overruled *pro forma.* The motion was based upon the contention that the relator had failed to establish a *prima facie* case, first, in that there was no proof that his appointment by the mayor was to meet an extraordinary exigency or to prevent a stoppage of public business as provided by Code, Section 4488, relating to temporary appointments by the mayor; and, second, that there was no proof of a notification to the civil service commission of a vacancy in the position of valveman, as provided for in Code, Section 4481, relating to the manner of making appointments in the classified service.

As this motion lies at the threshold of the case, the grounds therefor will be considered before any discussion of the merits.

1. If the facts of public necessity for relator's appointment, that is to say, extraordinary exigency or impending stoppage of public business must be affirmatively proved, the relator after eighteen months must establish all the conditions of the public service at the time of his appointment, and the good faith of the then mayor must be inquired into on the score of whether at the time of this appointment there was impending an extraordinary exigency or a stoppage of public business. Manifestly this is a burden almost impossible to sustain by one in relator's position. If such a rule were established, no employee in the public service would hold his position in security unless prepared at all times to submit to judicial inquiry the history of his appointment to office. His pay might at any time be stopped with impunity unless he were prepared at all seasons to show affirmatively that even in collateral matters his appointment was beyond suspicion. The mere statement of the logical consequences of the contention made carries its own refutation. Manifestly official recognition and record of an appointment must supply the requisite proof in such a case, at least until impeached by other evidence.

In this case the mayor's official notification to the civil service commission of relator's appointment and the commission's recognition thereof in its roster kept in pursuance of statute, Code, Section 4483, supply the requisite *prima facie* proof, and no attempt was made to impugn this evidence.

However, in argument attention was called to the fact that the mayor's letter of notification of relator's appointment fails to recite that the appointment was made to meet an extraordinary exigency or to prevent stoppage of public business. The appointment nevertheless was made and was officially recorded by the civil service commission. Its validity depended upon the existence of the statutory conditions, or rather, the exercise in good faith of the mayor's determination of the existence of extraordinary exigency or an impending stoppage of public business. The mayor, having the power to appoint under certain conditions and having made an appointment, his exercise of power will be presumed to have been in accordance with, rather than in viola-

tion of law. Whether or not the existence of the statutory conditions be recited in giving notice of the appointment matters not at all, provided those conditions existed or were in good faith found to have existed by the appointing officer.

In view of the record evidence of the appointment in this case, the necessity for relator's temporary appointment by the mayor to avoid a stoppage of public business is not a matter essential to be proved by the relator in the first instance, but if put in issue as it was is matter to be developed in evidence as an affirmative defense. No evidence whatever was offered in support of this defense. Upon the first ground stated, therefore, the motion to dismiss was properly overruled.

II. The second ground of the motion, namely, that notice of a vacancy communicated to the civil service commission prior to any appointment was a condition precedent to action by the mayor, is not well taken for reasons which will be stated hereafter.

The underlying issues in the case remain to be considered. They may be briefly stated in the two-fold contention made in argument on behalf of the civil service commission, and are:

First. That the original appointment of relator was an invalid one; and,

Second. That by reason of Rule 73 of the rules and regulations of the Cincinnati civil service commission, adopted and promulgated in March, 1912, prior to relator's appointment, the latter's tenure or standing as a temporary appointee, if originally valid, terminated three months after the date of his appointment, or, to be exact, May 24, 1913. Rule 73, hereafter quoted in full, provides that:

"Such temporary appointment shall not continue  *  *  * for a longer period in any case than three months."

1. As to Legality of Relator's Appointment.

It is to be borne in mind that the director of public service is the appointing officer for all positions in his department. By Code, Section 4481, the director of public service, on the occasion of a vacancy in the classified service, is required to notify

the civil service commission thereof. Thereupon it is the duty of the commission to certify to the director an eligible list for the position vacated, prepared as the result of competitive examination. From such eligible list the director may fill the vacancy. If no eligible list is forthcoming, the director is powerless. He has no power to make a temporary appointment, however much the public service may suffer by reason of the vacancy. Obviously the Legislature deemed it unwise to give to the official having the power to make permanent appointments from a list created by competitive examination the further power to fill vacancies temporarily without examination of applicants. It was doubtless thought, and wisely, that the power of making temporary appointments would be used to evade recourse to eligible lists. Accordingly the continuity of the public service was guarded by placing in another official, the mayor, the sole power to fill vacancies temporarily. The provision in this behalf is that of Code, Section 4488.

The statutory appointing powers of the mayor and the director of public service are distinct and independent. The mayor can make no permanent appointment; the director of public service can make no temporary appointment. Permanent appointments by the director are valid only if made in pursuance of Code, Section 4481; temporary appointments by the mayor are not contingent upon the taking of the several steps provided in Section 4481, and are valid if made in pursuance of an honest determination by the mayor that a temporary appointment is necessary to prevent the stoppage of public business or to meet an extraordinary emergency. Of course, if at the time of a vacancy occurring an eligible list for the position is available, no temporary appointment could be made, as no basis would exist for any appointing power on the part of the mayor.

In the present case no eligible list for relator's place existed at the time of his appointment, none exists today, and so far as appears, the civil service commission has taken no step to create such a list.

From the foregoing analysis of the statutory powers of appointment, both for permanent and temporary incumbencies, it

follows that in the case at bar relator's appointment was a valid one, being made under conditions such that no permanent appointment could by any possibility be made short of say three or four weeks, counting the two weeks required for notice of holding examinations and a further time for actual examination and the grading of applicants.

It may, of course, be contended that on the occurrence of a vacancy in the post which relator was chosen to fill, the director of public service was derelict in not notifying the civil service commission thereof. In point of fact, such notification would have served no purpose other than to hasten the commission in holding a competitive examination for the position. This purpose, and it is manifestly a highly important purpose, was in fact served by the mayor's letter to the commission, notifying it of relator's temporary appointment "in the absence of an eligible list." The failure of the director to send to the commission a formal notice of this vacancy was, as has been pointed out, in no sense a condition precedent to a valid appointment by the mayor, and in this instance at least it did not work a detriment to the interests of civil service, because the commission was notified one week later by the mayor, but has been unable presumably to furnish an eligible list to this day, eighteen months later.

These last considerations are doubtless somewhat beside the point, for a default, if default there was, on the part of the director of public service in no wise invalidates the relator's position as an applicant for the relief herein prayed for.

II.   Rule 73 of the Cincinnati Civil Service Commission.

In the rules and regulations of the civil service commission of Cincinnati, passed March, 1912, under the title, "Temporary Appointments," appears the following:

"73. In the absence of an appropriate eligible list from which to fill a vacancy, the Commission may authorize a temporary appointment without examination. Such temporary appointment shall not continue for more than ten days after an appropriate list has been established, nor for a longer period in any case than three months, nor shall a successive temporary appointment to the same vacancy be made."

If the language of Rule 73 be taken alone and adopted as an integral part of the civil service laws in force in municipalities in 1913, it is manifest that relator's standing, even as a temporary appointee under the statutes pertaining to civil service, ceased May 24, 1913, three months after his appointment.

By Section 4486 of the General Code (P. & A.), the civil service commission was empowered to "make such other rules and regulations as are not inconsistent with this chapter for the promotion and betterment of the service."

On this branch of the case, it is only necessary to inquire if Rule 73 in its apparent scope is consistent with the provisions of the so-called Payne law, providing for civil service in municipalities.

On behalf of the relator it is contended that Rule 73 is inconsistent with Section 4488 of the General Code, and is therefore not a valid regulation.   Section 4488 provides:

"To prevent the stoppage of public business or to meet extraordinary exigencies as provided in this title, the mayor may make temporary appointments."

The view apparently advanced on behalf of the civil service commission is that the statute (Section 4488), provided no term or limitation of service for temporary appointees, and that hence a field was left open for the civil service commission to place restrictions and limitations upon the holding of such appointees; that when by regulation a limitation was fixed, such limitation is to be read into the law pertaining to civil service.   The determination of whether or not this view is sound as applied to the present instance is fundamental in this case.

Before the adoption of Rule 73 of the Cincinnati commission, the incumbency or holding of a temporary appointee was limited only by the provisions of statute correlative to Section 4488. What then was this limitation?   Manifestly the creation of an eligible list through an examination held on the initative of the civil service commission.

Until such list is available, no permanent appointment can be made.   The danger of stoppage of public business brought about by a vacancy in a position of any importance may be, and doubt-

less usually is, a continuing one. As long as such a vacancy can not be filled by a permanent appointee, the occasion for a temporary incumbency remains. The power placed in the mayor to appoint a temporary incumbent implies necessarily the right of the incumbent to hold his position, except in case of his discharge on proper grounds, during the continuance of the state of affairs which occasioned his appointment. In the present case, therefore, assuming that relator's appointment was originally a valid one, and leaving out of consideration for the moment Rule 73, there should be no room to doubt that relator is now legally entitled to hold his position, for which no examination, competitive or non-competitive, has yet been held.

Rule 73, if read into the statute law as a part thereof, has the effect of adding to the last phrase of Code, Section 4488, as follows, "the mayor may make temporary appointments *for a period not longer than three months,*" that part italicized being the new matter. Is this new matter "inconsistent" with the statute as enacted by the Legislature? If the interpretation above made of the statute apart from any rule is the correct one, it is manifest that the new matter added by Rule 73 works a diminution of the mayor's statutory powers. If the period of holding by temporary appointees, originally limited only by the creation of an eligible list for the position, may be by a local civil service commission limited to an arbitrary period of three months, such limitation may be reduced to one month or ten days or any period such that the courts could not say was manifestly unreasonable.

A moment's reflection will disclose the consequences of such a conclusion. At the end of three months, or it might be ten days, the temporary incumbency would cease. A succeeding temporary appointment is forbidden by the same Rule 73. If no eligible list is available, the position can not be filled at all, permanently or temporarily. The public service in the branch where the vacancy existed would be at a standstill. The public would be without recourse other than to mandamus its civil service commission, which perhaps is already doing its human best, to hold examinations and provide an eligible list so as to permit a permanent appointment. If a court is found to grant

this relief, a period of two weeks for advertising must elapse before the examination is held and a further reasonable time for grading applicants. If no applicant appears or if none of those who appear and are examined attain an average of 70 per cent. required by another rule, no eligible list will be forthcoming and the public service remains unattended to.

The possible consequences thus suggested are by no means fanciful or improbable.

It is said, however, that such is the law and that the courts are powerless to modify it. I am unable to bring myself to such a conclusion. The logical, and to my mind necessary construction of the statutes, apart from Rule 73, discloses a simple and ample provision for the continuity of the public service in case of a vacancy arising in a position for which no eligible list is in existence. To hold that an administrative board having no legislative powers can by the adoption of a rule or regulation detract from and possibly upset the deliberately enacted scheme of the Legislature, is a course for which I find no authority or reason.

There is no doubt of the power of a court in a proper case to review and determine the validity and application of the rules of a civil service commission.

*In re Ricketts,* 98 N. Y. S., 502, Syl. 5:

"The court has power to review a rule of a municipal civil service commission setting up requirements for examination for promotion in the civil service and to declare the rule invalid if it is unreasonable and improper."

Two cases in New York analogous in principle, though not on the facts, suggest the doctrine which is applicable in the case at bar:

*People, ex rel Kastor,* v. *Kearney,* 62 N. Y. S., 1097, Syl.:

"Section 124 of the charter of the city of New York which authorizes the civil service commissioners to provide a probationary period before appointment to a clerical position, does not authorize them to make rules as to removals, and so much of Section 35 of the rules issued by them as provides for the peremptory removal of an applicant during the probationary

period of six months established by the commissioners is invalid."

See also to the same effect *People, ex rel Orr, v. Scannell,* 66 N. Y. S., 182.

The true rule to be applied in determining the validity of Rule 73 of the Cincinnati commission, as applied to the present case, is briefly stated in *Wyman's Administrative Law,* Section 99:

"In execution anything may be done that is administration, nothing may be done that is legislation—is the principal distinction."

This distinction is given point by two decisions of the U. S. Supreme Court, referred to by the same author.

In *Morrill* v. *Jones,* 106 U. S., 466, the validity of a regulation of the Secretary of the Treasury was in question. The United States statute law provided that certain animals should be imported free of duty, subject to regulations that might be prescribed by the Secretary of the Treasury. The treasury regulation on the subject provided that the collector of the port should be satisfied that the animals were of superior stock. Mr. Chief Justice Waite said:

"The Secretary of the Treasury can not by his regulations alter or amend a revenue law. All he can do is to regulate the mode of proceeding to carry into effect what Congress has enacted. In the present case we are entirely satisfied that the regulation acted on by the collector was in excess of the power of the Secretary. The statute plainly includes animals of all classes. The regulation seeks to confine its operation to animals of superior stock. This is manifestly an attempt to put into the body of the statute a limitation which Congress did not think it necessary to prescribe. * * * In our opinion the object of the Secretary could only be accomplished by an amendment of the law. That is not the office of a treasury regulation."

In *Merritt* v. *Welch,* 104 U. S., 694, there was under review another regulation of the Treasury Department designed to supplement an act of Congress applicable to duties on sugar. The act of Congress provided a schedule for sugars Dutch standard

in color.   The Treasury regulation provided an additional chemical test to determine the sacharine strength of the sugar.   Mr. Justice Bradley said:

"There are two very distinct modes of distinguishing sugar. One is determined by the color standard; the other by a chemical standard.   Which of these did Congress adopt?   We think clearly the former.   If it be found by experience that the standard of the statute is a fallacious one, can the executive department supply the defects of legislation?   Congress alone has the authority to levy duties, and its will alone is to be sought."

The text-writer last quoted concludes:

"When a regulation is found with no positive law in support of it, the regulation is thus held void; how much more will the regulation be held void when it is found that it is inconsistent with positive law."

The conclusion is, therefore, not to be avoided that Rule 73, if applicable at all in this case, is inconsistent with General Code, Section 4488, and to the extent that it is inconsistent therewith, it is void.

It should be said in his connection that no criticism is made or intended of the provisions of the commission's Rule 73, considered from the viewpoint of propriety in intent, as distinguished from validity in law.   It is in the interests of true civil service that temporary appointments be temporary in fact as well as in theory.   It may even be that the commission adopted this rule as a prod to the various appointing officers of the city government, and also as a self-imposed ideal.   So far as appears from the testimony in the present case, the failure for eighteen months to provide an eligible list for the position of valvemen was due rather to the magnitude of installing a comprehensive system of competitive examination in a large city, rather than to any inactivity on the part of the commission.   Indeed, this very consideration may well have been present in the minds of the legislators in enacting the provisions of the Payne law with reference to temporary appointments.

Support for the conclusions thus indicated may also be found in the analysis of Rule 73 in conjunction with Rule 74 of the Cincinnati commission, under the same title:

"Rule 74. A temporary appointment to prevent the stoppage of public business or to meet extraordinary exigencies shall continue only until such time as the commission can certify persons from an appropriate eligible list to fill the vacancy."

It will be observed that the wording of Rule 74 coincides exactly with that of General Code 4488, and that the continuance of a temporary appointment is by the rule declared to be that precisely which is fixed by unavoidable implication from the statute. In other words, Rule 74 is merely declaratory of the statute law.

On the other hand, Rule 73 pertains to a vacancy to which "the commission may authorize a temporary appointment without examination."

It will be borne in mind that under the statute in force, when these rules were adopted the commission was vested with considerable discretion in determining what places were in the classified and what in the unclassified service. The presumption is, therefore, strong that Rule 73 was intended to permit a temporary enlargement of the unclassified service, dispensing with competitive examination within limits under the strict and immediate control of the commission itself. In the absence of such a construction of the two Rules 73 and 74, they are mutually inconsistent. The construction suggested makes them consistent. It would appear, therefore, that Rule 74 applies and was intended to apply to temporary appointments by the mayor under Code, Section 4488, and that Rule 73 does not and never did so apply. This suggestion is further borne out when it is considered that the civil service commission has not and never had the authority to *authorize* the *mayor* to make temporary appointments. The mayor's authority in this respect is derived solely from the statute, which the commission is powerless to enlarge or diminish.

In any event, Rule 74 is consonant with and declaratory of the statute law as it stood in 1913, prior to the last amendment, and its provisions have been substantially copied in Section 14, par 1, of the civil service Act of April 28, 1914, now in force, which reads in part as follows: "*such provisional appointment shall continue in force only until regular appointment can be*

*made from eligible lists prepared by the Commission*, and such eligible lists shall be prepared within ninety days thereafter.''

It is obvious that the language italicized fixes the duration of a temporary appointment, and that the concluding phrase of the statute just quoted is mandatory, or at least directory, only to the civil service commission.

At the oral argument of this case counsel for the commission laid much stress upon the authority of the case of *Shalvoy* v. *Civil Service Commission of New Jersey*, 84 N. J. L., 134, in which an opinion on rehearing is found at page 547 of the same report. The syllabus, at p. 134, is as follows:

''A court officer temporarily appointed pursuant to Section 29 of the civil service act and holding over after the expiration of the two months' temporary service allowed thereby, is not holding office or employment *de jure*.''

It was urged, upon the authority especially of this case as well as other cases which I shall not cite, that relator is at most an incumbent *de facto* and not *de jure*, and in consequence his lawful incumbency and the right to be paid for his services long ago ceased by operation of Rule 73 of the Cincinnati commission and by the coming into operation of the existing civil service statute. This contention has already been fully dealt with and need not be further considered, except to point out that a temporary appointee placed in position by virtue of a specific power granted by the civil service statutes of the state (in this case, Code, 4488) holds his position by virtue of that law and is serving *de jure* until by operation of that same law his service expires. The relator in this case, therefore, holds his employment *de jure*, because by law his employment expires, even on the theory most unfavorable to his holding, only upon the creation of an eligible list for his position.

As the relator was legally appointed to a place in the classified service under the statute law in force at the time of his appointment, and as his standing as a temporary appointee has not terminated by the creation of an eligible list for his position, it should be plain that his holding is protected by the provisions of Section 31 (Schedule) of the act of April 28th, 1913, as follows:

"All officers and employees in the classified service of the state, the counties, cities and city school districts thereof holding their positions under existing civil service laws, shall when this act takes effect, be deemed appointees under the provisions of this act."

The pleadings in this case do not raise the issue of whether or not the relator is an "incumbent" within the meaning of Section 10 of the act of April 28th, 1913, and therefore entitled to hold his position upon passing a non-competitive examination. I have, therefore, not formed or sought to form a conclusion upon that point, and the use of the phrase "incumbent" in this opinion is intended to have the sense of one performing the duties of a position, rather than a technical sense.

This opinion should perhaps not conclude without some reference to the case of *Lea v. State*, 15 C.C.(N.S.), 28, which was commented upon in argument by counsel for both sides. In the Lea case, at a time when the civil service provisions of the Payne law had come into effect, the director of public service of Cleveland (not the mayor) had appointed an inspector of street lighting without reference to the Cleveland civil service commission or to any eligible list. In fact, the city civil service commission had not organized or held competitive examinations, and no eligible list was available. The appointee sought to hold as a permanent official, and the director of public service refused to certify a vacancy in his post to the civil service commission. A writ of mandamus was issued, and properly, to compel the director to certify the vacancy. There was no question in this case of the validity of a temporary appointment by the mayor. Evidently the case is much misunderstood. Obviously the intended permanent appointment by the director of public service was invalid because not made in pursuance of Code, Section 4481, and the director had no statutory power whatever to make any temporary appointment. The decision in the Lea case, therefore, has no application in the case at bar and is not helpful in its consideration.

At the conclusion of the oral argument in the present case the court was furnished a copy of an opinion in the case of *State, ex rel Mugaven, v. Civil Service Commission of Cincinnati*, 12 O.

L. R., 204, very recently decided by one of the judges of the common pleas court of this county. That court, upon facts apparently similar to those disclosed by the pleadings and evidence in this case, refused the relief herein prayed for. The opinion of the learned common pleas judge has been read and considered with great care and respect. For the reasons herein stated, however, this court is unable to concur in the conclusions there announced.

A writ of mandamus will issue as prayed for.